UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
TIMOTHY SMITH,

      Plaintiff,

  -against-

CITY OF NEW YORK, MELODY
ROBINSON, and DENNIS MOGELNICKI,

      Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

  Plaintiff Timothy Smith, by his attorneys, Lumer & Neville, as and for his Complaint, hereby alleges as follows, upon information and belief:

### PARTIES, VENUE and JURISDICTION

  1. At all times hereinafter mentioned, plaintiff Timothy Smith was an adult male resident of Kings County, in the State of New York.

  2. At all relevant times hereinafter mentioned, defendant City of New York ("New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

  3. At all relevant times hereinafter mentioned, defendant Melody Robinson (Tax 939329), was employed by the City of New York as a Sergeant with the NYPD. Defendant Robinson is sued herein in her official and individual capacities.

  4. At all relevant times hereinafter mentioned, defendant Dennis

Mogelnicki (Tax 937118), was employed by the City of New York as a Police Officer with the NYPD. Defendant Mogelnicki is sued herein in his official and individual capacities.

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

6. Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq. in the Eastern District of New York, where the plaintiff and defendant City of New York reside, and where the majority of the actions complained of herein occurred.

### RELEVANT FACTS

7. On November 22, 2012, at or between 2:00 and 2:30 a.m., plaintiff was present at or near 25-72 Borough Place, in Queens County, New York.

8. Plaintiff and an acquaintance had driven to the area to go to a local club. Plaintiff had let his acquaintance out of the car and then driven around the corner to Borough Place, where he parked, exited, and locked the vehicle.

9. After plaintiff exited the vehicle, an unmarked police car containing at least two, if not more NYPD members, including the defendants, pulled up. One of the occupants rolled down a window and told plaintiff to freeze.

10. Two occupants exited the vehicle, searched plaintiff, and took his identification.

11. Plaintiff was held at the rear of his car, while the defendants used his keys to open and search his car and trunk, without seeking or receiving permission.

12. Plaintiff was then, without explanation, handcuffed, placed in a police vehicle, and removed from the scene.

13. Plaintiff did not see his acquaintance on Borough Place where he parked the car, and did not see him at the scene of this arrest.

14. Plaintiff was transported to a local area NYPD station house, where his arrest was processed and plaintiff was informed that he was being charged with criminal possession of a handgun, ammunition, and a holster.

15. Plaintiff was detained for a period of time before being transported to Queens County Central Booking, where he was held for an additional period of time.

16. While plaintiff was imprisoned by the defendants, defendant Mogelnicki completed arrest paperwork in which he expressly claimed that he (i) observed plaintiff's acquaintance standing next to the vehicle when plaintiff was arrested; (ii) saw plaintiff throw an object into the vehicle, and that he then found two live shells and a holster on the front seat of the vehicle; saw painter's tape affixed to the license plate of the vehicle so as to make the plate unreadable; and (iv) checked the license plate on the vehicle and determined that plate indicated that it belonged to a different vehicle.

17. Mogelnicki further stated in his paperwork that the acquaintance was carrying a loaded revolved in his waistband when he was apprehended.

18. Mogelnicki also stated that defendant Robinson told him that she observed plaintiff placing the painter's tape over the license plate.

19. Robinson was Mogelnicki's supervising officer and was present with

Mogelnicki at the arrest of plaintiff.

20.     All of these allegations were false and Mogelnicki and Robinson knew them to be false at the time they were made. Plaintiff did not throw anything into the car as described by defendants and plaintiff's acquaintance was not present with plaintiff when plaintiff was arrested, nor was he arrested with plaintiff. At no time did plaintiff actually or constructively possess the gun, the ammunition, or the holster, nor were any of these items recovered from the vehicle, as defendants claimed.

21.     At no time plaintiff place any tape, or any other material, over the license plate of his vehicle, and defendants' claims that he did or that the plate was obscured in any way was false.

22.     Mogelnicki, acting with Robinson's knowledge and approval, forwarded these false allegations to the Queens County District Attorney ("QCDA") in order to justify the arrest and to persuade the QCDA to commence the plaintiff's criminal prosecution.

23.     Mogelnicki and Robinson knew and understood that the QCDA, in evaluating whether to commence a criminal prosecution against the plaintiff, was relying on the truthfulness of their claims and statements, and was assuming that all of these factual statements and claims Mogelnicki and Robinson were relaying were truthful in all material respects, and that no material or exculpatory information had been withheld.

24.     As a direct result of these allegations by Mogelnicki and Robinson, the plaintiff was criminally charged by the QCDA under docket 2012QN060825 with three

4

felony counts of criminal possession of a weapon, possession of ammunition, and failure to properly display his license plate.

25. At his arraignment, plaintiff, who was charged with three felony weapons charges, was given bail in the amount of $100,000, which he could not post.

26. Plaintiff was then taken into custody by the municipal defendant's Department of Corrections, and kept in their custody against his will until about November 30, 2012.

27. On or about November 30, 2012, plaintiff, who had not posted bail, was released from custody.

28. On December 10, 2012, on the motion of the QCDA, all charges against plaintiff were dismissed, and the action was terminated in plaintiff's favor.

29. At no time prior to or during the encounter did probable cause to arrest the plaintiff exist, nor was it reasonable for the defendants to believe that there was probable cause to arrest plaintiff.

30. At no time did either of the individual defendants take any steps to intervene in, prevent, or otherwise limit the misconduct engaged in by the other individual defendant against the plaintiff.

31. The individual defendants intentionally and deliberately gave false statements and/or failed to file accurate or corrective statements, or otherwise failed to report the conduct of the defendants who engaged in the misconduct described herein as required.

32. That at all times relevant herein, the defendants were acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

### FIRST CAUSE OF ACTION

33. Plaintiff repeats the allegations contained in paragraphs "1" through "32" above as though stated fully herein.

34. Defendants willfully and intentionally seized, searched, detained, and arrested plaintiff, and caused him to be imprisoned, without probable cause, and without a reasonable basis to believe such cause existed.

35. Defendants willfully and intentionally fabricated evidence and denied plaintiff a fair trial by falsely claiming that they recovered a weapon and ammunition, or that plaintiff was in possession of these items, when they knew this to be untrue, and by claiming that plaintiff had violated state vehicle and traffic laws, and then forwarded these materially false factual claims to the QCDA in order to justify their arrest of plaintiff, and to bring about and cause the deprivation of plaintiff's liberty and his criminal prosecution by the QCDA.

36. Defendants caused plaintiff to be subjected to a malicious prosecution by causing the commencement of his prosecution through the submission of false and fabricated evidence to the QCDA.

37. By so doing, the individual defendants, individually and collectively,

subjected the plaintiff to false arrest and imprisonment, unlawful searches of person and property, malicious prosecution, and the deprivation of her right to a fair trial through the use of fabricated evidence, and thereby violated, conspired to violate, and aided and abetted in the violation of plaintiff's rights under the Fourth, Sixth, and Fourteenth Amendments of the United States Constitution.

38. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, lost earnings, damage to his personal property, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

## SECOND CAUSE OF ACTION

39. Plaintiff repeats the allegations contained in paragraphs "1" through "38" above as though stated fully herein.

40. Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and/or over the NYPD.

41. Defendant had actual or constructive knowledge that there was inadequate supervision over and/or within the NYPD with respect to its members' abuse of their authority, use of excessive force, abuse of arrest powers, and other blatant violations of the United States Constitution and the rules and regulations of the NYPD. Despite ample notice of inadequate supervision, defendants took no steps to ensure that reasonable and

appropriate levels of supervision were put place to reasonably ensure that NYPD members engaged in police conduct in a lawful and proper manner, including their use of their authority as law enforcement officers with respect to the general public, including, and specifically, the plaintiff herein.

42. The defendant City of New York deliberately and intentionally chose not to take action to correct the chronic, systemic, and institutional misuse and abuse of police authority by its NYPD employees, and thereby deliberately and intentionally adopted, condoned, and otherwise created through deliberate inaction and negligent supervision, an NYPD policy, practice, and custom of utilizing illegal and impermissible searches, arrests, and detentions, and the manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol Guide, up to and beyond the plaintiff's arrest.

43. The acts complained of herein are a direct and proximate result of the failure of the City of New York and the NYPD properly to select, train, supervise, investigate, promote and discipline police and correction officers and supervisory officers.

44. The failure of the City of New York and the NYPD properly to select, train, supervise, investigate, promote and discipline police and correction officers and supervisory officers constitutes gross and deliberate indifference to unconstitutional conduct by those officers.

45. The official policies, practices and customs of the City of New York and the NYPD alleged herein violated plaintiffs' rights guaranteed by 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the Constitution of the United States.

46. All of the acts and omissions by the individual defendants described above were carried out pursuant to overlapping policies and practices of the municipal defendant in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures, and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD

47. Therefore the municipal defendant has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York was deliberately indifferent to the risk that the inadequate level of supervision would lead to the violation of individuals' constitutional rights in general, and caused the violation of the plaintiff's rights in particular.

48. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, lost earnings, damage to his personal property, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiff demands judgment against defendants jointly and severally as follows:

    i. on the first cause of action, actual and punitive damages in an amount to be determined at trial;

    ii. on the second cause of action, actual damages in an amount to be determined at trial;

    iii. statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of this action; and

    iv. such other relief as the Court deems just and proper.

Dated:  Brooklyn, New York
        January 3, 2014

                LUMER & NEVILLE
                Attorneys for Plaintiff
                225 Broadway, Suite 2700
                New York, New York 10007
                (212) 566-5060

        By: _____
            Michael B. Lumer (ML-1947)